William H. LEACH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17549.

United States Court of Appeals District of Columbia Circuit.

Argued March 28, 1963.

Decided April 25, 1963.

Mr. Arnold H. Leibowitz, Washington, D. C., with whom Mr. Max M. Kampelman, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Robert D. Devlin, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Alexander L. Stevas, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BASTIAN and WRIGHT, Circuit Judges.

## J. SKELLY WRIGHT, Circuit Judge.

Appellant was convicted of robbery.[1] On appeal he alleges that the trial court committed reversible error in (1) failing to order, pursuant to 18 U.S.C. § 3500(b), the production of a statement taken from a witness by the police, and (2) failing to stay the imposition of sentence pending a psychiatric examination.

■ ■ 18 U.S.C. § 3500(b) provides that: "After a witness called by the United States has testified on direct examination, the court shall, on motion 'of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." After the direct examination of the witness Emge was concluded, appellant moved for the production of his statement made to the police. When the prosecutor indicated he did not have the statement,[2] the court told counsel to ask the policeman for the statement when he "takes the stand."

This was error. 18 U.S.C. § 3500(b) requires the production of the witness' statement for use in his cross-examination. Here the court required appellant's counsel to proceed with cross-examination of the witness without it. The fact that the prosecutor does not admit the existence of a statement does not relieve the court of the "affirmative duty to determine whether any such statement exists." Saunders v. United States, 114 U.S.App.D.C. 345, 348, 316 F.2d 346, 349 (1963). The court must "conduct any inquiry which is 'necessary to aid the judge to discharge the responsibility laid upon him to enforce the statute.'" *Ibid.* And pending this inquiry, cross-examination may not proceed without

---

1. 22 D.C.Code § 2901.

2. On appeal the Government admits that the statement was in its possession and was producible under 18 U.S.C. § 3500 (b).

the expressed acquiescence of the defendant.

■ We find the error here, however, to be harmless. When the policeman took the stand, the entire police file was produced and made available to defense counsel. After counsel read the file, the matter of the statement was not pursued.

Appellant's second point may not be so easily disposed of. Appellant argues that prior to sentence, in order to assist the court in determining an appropriate disposition of his case, he asked that he be afforded a mental examination. At the time of sentence appellant stated to the court that he was "under a psychiatrist for one year" in 1935, that he "had a mental disorder from 1952," that he "was under a doctor in the state prison at Trenton" in 1952, and that all but 63 days of the past 31 years, since he was 19 years old, he has spent in various prisons, serving sentences for a variety of crimes. The court imposed the maximum penalty provided by law without responding to appellant's request for an examination prior to sentence.[3]

■ In the act of sentencing, the judge approaches the attribute of the Almighty—he sits in judgment of his fellow man. At that moment he must determine the penalty which society will impose on the offender for his crime. But more importantly, for the offender and for society, in sentencing, the judge must consider a program of rehabilitation designed to preclude, so far as current learning can furnish a guide, a repetition of the crime. To this end the Congress has placed several aids at the disposal of the sentencing judge to assist him in making his awful decision. 24 D.C.Code § 101 provides for the appointment by the District Court of probation officers, persons trained in social justice. Rule 32(c) of the Federal Rules of Criminal Procedure provides that a probation officer "shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs." 24 D.C.Code § 301 provides for commitment prior to sentence to a hospital for examination to determine the mental competence of the offender. 24 D.C.Code § 106 provides for the appointment of a qualified psychiatrist and a qualified psychologist to assist judges of the District Court in criminal cases in carrying out their duties.[4] Unfortu-

---

3. The colloquy, in pertinent part, between the court and counsel for appellant at the time of sentence follows:
"Mr. Messerman: * * * I discussed with Mr. Leach his entire background. I obtained his history and obtained it with the purpose of determining whether or not there was sufficient ground for establishing a prima facie case for mental observation. At that time, that point, Mr. Leach was not interested in filing a motion for mental observation. I told him to consider it and I would consider it, and discuss it with a psychologist to determine whether there was a prima facie showing. There was no prima facie showing. The only thing there was, was recidivism. Mr. Leach had spent at that point 31 years of the past 31 years in prison. He had been out for a period of only 63 days.
"The Court: You must like it.
"Mr. Messerman: I don't believe that is the case, Your Honor. At the age of 19 this man was convicted for robbery, was sentenced to five to forty years in Stillwater Prison. He spent almost nine years in that prison, was in solitary confinement for a period of one year, was released. After a period of 30 days, was again arrested and convicted of robbery, and spent a period of seven and a half years in prison. After he had been convicted of robbery he was held and tried for violation of the Dyer Act, served a three year sentence post-dated. He was transferred to Atlanta after serving seven and a half years on the robbery conviction. At the point of where he finished the three year sentence at Atlanta he was then held upon a detainer for auto theft in New Jersey involving the same automobile, and was sentenced seven to ten years in New Jersey. He served four years and seven months of that sentence. He got out, and was out for a period of about thirty-five days. Of course, was unable to obtain employment. Who knows why. * * *"

4. The interest of Congress in providing assistance to the sentencing judge is further demonstrated by 18 U.S.C. § 4208

nately, a chart furnished the District Court by its legal Psychiatric Services, created pursuant to this statute, indicates that in the year 1962, during which the District Court imposed 1041 sentences, the Legal Psychiatric Services was called upon to make only three pre-sentence examinations.[5]

There is no indication here that the court, in imposing as it did the maximum penalty provided by the statute, made use of any of the aids to sentencing placed at its disposal by the Congress of the United States. Under the circumstances, we think the case should be remanded to the District Court for reconsideration of the sentence. It may be that on reconsideration the sentence previously imposed will be undisturbed. In view of the fact, however, that the record reflects no response on the part of the court to appellant's request for examination prior to sentence, that request may not have been considered. It may be also that further consideration generally may provide a more appropriate means for protecting the interests of society and the appellant.

So ordered.

BASTIAN, Circuit Judge (dissenting).

We are all agreed there was no reversible error which affects the verdict.

The only purpose of the remand is to command the District Court to exercise its discretion in a particular manner, i.e., to consult the Legal Psychiatric Services before sentencing. This is done in the face of the presumption of regularity and in face of the long time lapse between verdict and sentence, which plainly indicates that the District Judge received the usual pre-sentence report. I think we have no power to tell the District Court that, before sentencing a convicted person, a psychiatrist must be consulted, especially in a case where no issue of competence was raised before or during trial.

I am familiar with the sections of the D.C.Code and with Rule 32(c) of the Federal Rules of Criminal Procedure cited by the majority. I am also familiar, both from my experience as a District Judge and from observation since becoming a member of this court, with the practice in the trial court, with very, very few exceptions, of referring to the Probation Officer for pre-sentence report all cases in which a plea of guilty is taken or a conviction by a jury had and motion for a new trial denied. No claim is made that this was not done in the present case; and the lapse of time between the date of the trial (May 15, 1962) and that of the sentencing (June 15, 1962) indicates that it was done. Certainly we must, in the absence of any contrary showing, presume the regularity of judicial proceedings.

Title 24, § 301(a), D.C.Code (1961), providing, among other things, for commitment of persons of unsound mind to the District of Columbia General Hospital prior to sentence, refers to cases where "it shall appear to the court from the court's own observations, or from *prima facie evidence* [emphasis supplied] submitted to the court, that the accused is of unsound mind or is mentally incom-

(b), not yet applicable generally in the District of Columbia. 18 U.S.C. § 4208 (b) provides for a three-month commitment to the custody of the Attorney General prior to sentence "if the court desires more detailed information as a basis for determining the sentence to be imposed." Under the statute the Director of the Bureau of Prisons "shall cause a complete study to be made of the prisoner and shall furnish" a report of the study to the sentencing judge. The report "may include but shall not be limited to data regarding the prisoner's previous delinquency or criminal experience, pertinent circumstances of his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent." See also 28 U.S.C. § 334.

5. The chart shows the number of pre-sentence examinations made for the District Court since 1958 by the Legal Psychiatric Services as follows: In 1958—17, in 1959—32, in 1960—51, in 1961—13, and in 1962—3.

petent so as to be unable to understand the proceedings against him or properly to assist in his own defense."

Here we must assume that it did not appear to the trial judge, from his own observation, that appellant was of unsound mind or mentally incompetent, as provided in § 301(a); and certainly, other than that appellant was a recidivist, there was no such prima facie evidence before the court. I am not willing to accept the premise that, because a man has committed a number of crimes of violence, this is evidence of unsoundness of mind or mental incompetence. Cf. Williams v. United States, 114 U.S.App.D.C. 135, 312 F.2d 862 (1962), where we said:

> "The history shows that Williams is a confirmed criminal, a 'recidivist' in the parlance of the penologists. But that fact alone does not require that he be committed to a hospital rather than the penitentiary. A long criminal record does not excuse crime." 312 F.2d at 864.

There are undoubtedly a number of reasons for not calling upon the Legal Psychiatric Services, and it is exclusively within the discretion of the District Court whether and to what extent that facility is to be used in a given case. We have no jurisdiction over sentencing and surely we have no power to direct the District Court to exercise a power which is purely discretionary.

I might add that under the federal prison system a prisoner, upon his arrival at prison, is first processed for weeks in order to classify him and determine what rehabilitation is called for and, specifically, whether mental treatment is needed. If the psychiatrists conclude the prisoner needs their help, he is sent to the institution at Springfield, where the warden (Dr. Settle) is himself a psychiatrist.

The majority uses the power of this court to *command* that the District Court embark on an inquiry into what kind of treatment appellant needs, when Congress has set up elaborate machinery to

have this precise study made at the time the prisoner is committed to custody.

I think appellant was properly convicted and sentenced, and that the judgment of the District Court should be affirmed.