Harold W. GREENWELL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17121.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 24, 1962.

Decided Jan. 17, 1963.

Petition for Rehearing En Banc
Denied May 6, 1963.

Mr. Justice Reed dissented.

Mr. Dean F. Cochran, Washington, D. C. (appointed by this court) for appellant.

Mr. Tim Murphy, Asst. U. S. Atty. for appellee. Messrs. David C. Acheson, U. S. Atty. Frederick G. Smithson, Asst. U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., at the time the brief was filed, were on the brief for appellee. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellee.

Before Mr. Justice REED, retired,* BAZELON, Chief Judge, and WRIGHT, Circuit Judge.

* Sitting by designation pursuant to Sec. 294(a), Title 28, U.S.Code.

BAZELON, Chief Judge.

Our indigent appellant was apprehended in Fort Worth, Texas, pursuant to a warrant charging robbery of a bank in the District of Columbia. After jury trial he was convicted and sentenced to serve six to eighteen years in prison and to pay a fine of $2,000.

His chief complaint on this appeal relates to the trial court's denial of his requests to subpoena certain witnesses in support of his various motions to exclude confessions and physical evidence obtained from him in Fort Worth.

The Government's and appellant's versions of the relevant facts—as developed in the pre-trial documents and trial testimony—were diametrically opposed. The Government's testimony was that appellant, after being advised of his right to remain silent and to contact an attorney, voluntarily admitted that he had committed the crime, invited the officers to his mother's house where he led them to the stolen money and a toy pistol, and asked to be taken to the police station where he signed a detailed written confession. Appellant, on the other hand, testified that he was "grabbed . . . in the back of [his] pants," threatened with physical violence, slapped in the face when he refused to confess orally, and tricked or beaten into signing the written confession; moreover, he denied consenting to the "search" of his mother's home.

Early in the proceedings, court-appointed counsel attempted—in a variety of ways—to obtain support for appellant's story. He requested authorization to conduct certain investigations in Fort Worth at Government expense,[1] but this was denied. He moved, pursuant to Rule 15, Fed.R.Crim.P., to take depositions, at Government expense, of appellant's sister and sister-in-law who had witnessed the search and who appellant claimed would testify that no consent was given.[2] This too was denied. And he moved, pursuant to Rule 17, Fed.R. Crim.P.,[3] to subpoena, at Government expense, a number of individuals and docu-

1. In support of this request, he alleged that "this case involves an arrest, search, and recovery of [stolen property] in Ft. Worth, Texas"; that "appointed counsel had been unable to perform, or have performed, any investigation involving the above events"; that "the Legal Aid Agency * * * due to the far away location of the proposed agency investigation, would be unable to authorize the same."

2. In support of these motions, he alleged that these witnesses are expected to testify "that a search took place on the premises of their abode, that the occupants of the premises did not give consent to any search, and the actions and statements at the time of the defendant and the officers involved show that the defendant did not give any consent." He also alleged that he had written to the witnesses inquiring as to their availability and had been informed that they could not appear at the trial because "Glenda Greenwell is a teenage [sic] still in school. Virgie Greenwell is pregnant, suffers from sickness from this condition, and has a six or seven month old baby who is sickly."

3. Rule 17 provides in pertinent part:
"(a) For Attendance of Witnesses; Form; Issuance. A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a commissioner in a proceeding before him, but it need not be under the seal of the court.
"(b) Indigent Defendants. The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant. The motion or request shall be supported by affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness. If the court or judge orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same

ments, including: (1) a certain cell-mate in the Fort Worth jail who, he claimed, "could testify as to the facial appearance of the defendant after being questioned and as to the statements of the defendant after being questioned and as to the statements of the defendant that he was threatened and beaten, said statements being made while under the effects of such duress"; (2) certain newspaper reporters who, he claimed, "were let into the interrogation room immediately after the interrogation ceased and could testify as to the visual effects of the cuffing around which would indicate that any admission or confession would be involuntary"; and (3) certain records of the jail which he claimed "should have a photograph of defendant when booked that should show the effects of being cuffed around during interrogation." This motion was also denied, on the ground that the requirements of Rule 17(b) had not been met, since "no showing [had been made] that the evidence of the witnesses is material to the defense and that the defendant cannot safely go to trial without such."

At trial the Government produced the arresting officers from Fort Worth, each of whom testified to the Government's version of the facts. Appellant testified to his opposing version, but without any supporting testimony or evidence. The confessions and the fruits of the "search" were ultimately admitted into evidence, and appellant was convicted.

In this appeal we face the question whether the denial of the requested subpoena was error.

An indigent defendant's request for subpoenas is governed by Rule 17(b), Fed.R.Crim.P. It requires that each mo-

tion to subpoena a witness at Government expense be supported by an "affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that [1] the evidence of the witness is material to the defense, that [2] the defendant cannot safely go to trial without the witness and that [3] the defendant does not have sufficient means and is actually unable to pay the fees of the witness. * * * *"

Here, appellant filed a supporting affidavit averring that the witnesses sought would corroborate his own version of the facts which, if believed, would require suppression of the confessions, the money and the gun. Thus the averments showed the materiality and necessity of the proposed witnesses' testimony. It is apparent, however, that the trial judge construed the Rule to require that the averments be substantiated by the production of testimonial or documentary evidence.[4] We disagree. We think the Rule contemplates that the required showing "that [1] the evidence is material * * *" and "that [2] the defendant cannot safely go to trial without the witness" may rest upon averments in the supporting affidavit, as does the required showing "that [3] the defendant does not have sufficient means * * *." Thus if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.[5]

---

manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

4. This construction was particularly oppressive to appellant, since the trial court —by denying defense requests for investigative services and depositions—had effectively precluded appellant from making the type of showing required by its construction of the Rule.

5. Our construction of the Rule is consistent with Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962), which makes clear the duty of Federal courts "to assure to the greatest degree possible" within the framework of the relevant statutes or rules "equal treatment for every litigant" before the bar of criminal justice, regardless of financial ability. In that case the Supreme

 It follows that the court erred in denying at least some of appellant's requests for subpoenas. We are unable to say, however, whether the error was prejudicial or harmless. Therefore, without reversing the conviction, we remand the case to the District Court with directions to determine, from evidence produced by affidavits or pursuant to procedures prescribed by Rules 15(c) and 17(b), whether the witnesses sought would have presented testimony affecting any issue in the case. If testimony affecting any jury issue (e. g., voluntariness of the confessions) would have been presented, appellant is entitled to a new trial. If testimony affecting any issue for decision by the court (e. g., Mallory [6] or illegal search and seizure) would have been presented, then the witnesses will be subpoenaed for a hearing on any such issues and a new trial ordered if the hearing shows that evidence admitted at trial should have been excluded.[7] In the absence of such matters, the conviction will stand. Since we are remanding for a determination whether an error was harmless or prejudicial, ambiguities or uncertainties should be resolved in favor of the accused. See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Any determination of the trial judge will, of course, be appealable to this court.

So ordered.

Mr. Justice REED (dissenting).

This appeal presents problems regarding the preparation by an indigent defendant of his defense to criminal charges. Congress and the federal courts have been sympathetic through the years with the need to accept financial responsibility for those who are unable to pay the costs of their witnesses.[1] Provision

---

Court construed the statute providing that "Any court of the United States may authorize [the taking of an] appeal therein, without prepayment of * * * costs * * *" to mean that a court of appeals *must* authorize the taking of an appeal unless it is so frivolous that it "would be dismissed in the case of a nonindigent litigant." In doing so, the Court strongly intimated that a construction of the statute permitting different criteria of dismissal depending on whether the appeal was paid or in forma pauperis would run afoul of the due process proscription of unreasonable discrimination.

Rule 17 provides a different procedure for indigents and non-indigents: indigents must make the previously described judicial showing, whereas non-indigents may obtain subpoenas directly from the clerk's office without averring anything. See note 3 supra.

It is argued that there is a valid distinction between indigents and non-indigents in obtaining subpoenas which justifies different treatment: i. e., that there is a built-in financial "brake" on nonindigents which makes it unlikely that they will seek, at their own expense, to issue subpoenas without cause, whereas there is no such "brake" in the case of indigents whose subpoenas would be issued at Government expense. In responding to the identical argument made in the context of frivolous appeals, the

Supreme Court in Coppedge, supra, said that there is "no *a priori* justification * * * for considering [indigents' applications] as a class to be more frivolous than those in which costs have been paid." "[I]f frivolous litigation exists, we are not persuaded that it is concentrated in this narrow, yet vital, area of judicial duty." The same should be said about in forma pauperis subpoenas. If there are frivolous requests for subpoenas, the court is not powerless to control them whether they are made by indigents or non-indigents. And even if the assumption is correct that there is a greater likelihood of frivolous subpoenas by indigents, the rules should be construed to provide for no more discrimination than is necessary to protect against this assumed danger.

6. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

7. Since new evidence may be forthcoming, we do not on this appeal decide whether the facts, as developed in the present record, require exclusion of the confessions or fruits of the search under the Mallory rule.

1. Act of August 8, 1846, ch. 98, § 11, 9 Stat. 74. This became § 878 of the Revised Statutes of 1878, and then 28 U.S. C. § 656 (1928 ed.). See also Act of Aug. 3, 1882, ch. 378, § 3, 22 Stat. 215, which became 18 U.S.C. § 656 (1927 ed.).

for the assumption of these expenses by the Government is now included in Rule 17(b) of the Federal Rules of Criminal Procedure, which reads:

"(b) Indigent Defendants. The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant. The motion or request shall be supported by affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness. If the court or judge orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

In addition, Rule 15(c) also authorizes the district court to direct the Government to bear the expense of taking depositions for an impecunious defendant. See also Proceedings in forma pauperis, 28 U.S.C. § 1915 (1958 ed.).

Under these provisions, the defendant with the assistance of his appointed counsel must furnish evidence satisfactory to the district court of his need to summon witnesses for his defense or to take depositions at distant points. The procedure is not put into operation on mere assertion of need, but requires the exercise of discretion by the district court judge. In an early case interpreting the statute antecedent to Rule 17(b), the Supreme Court stated:

"The third assignment is based upon the refusal of the court to grant an application by the prisoner for process for three witnesses, such process to be served at the expense of the government. The trial was begun on the 27th of May, 1890; the application was not made until the 31st day of May, just before the defendant was called as the last witness in his own behalf. It would probably have delayed the trial a number of days to send the process into the Indian Territory, make service of it there, and bring in these witnesses to testify. Whether the trial should be delayed for the production of these witnesses was clearly a matter of discretion and not reviewable upon a writ of error. *The testimony of the proposed witnesses seems to have been of little importance, and the application was to subpoena these witnesses at the expense of the government, which would of itself have been a matter of discretion, even had the application been made before the trial began.* Rev.Stat. § 878. It is clear that the ruling of the court is not subject to review. * * *" Crumpton v. United States, 138 U.S. 361, 364–365, 11 S.Ct. 355, 34 L.Ed. 958 (1891). (Emphasis added.)

See Goldsby v. United States, 160 U.S. 70, 73, 16 S.Ct. 216, 40 L.Ed. 343 (1895); Gibson v. United States, 53 F.2d 721 (C.A.8, 1931) cert. denied, 285 U.S. 557, 52 S.Ct. 458, 76 L.Ed. 946 (1932). The Notes to the Rules of Criminal Procedure for the District Courts of the United States, March 1945, indicate that the Rules were intended to carry over the same discretionary authority of the district judge.[2] See Reistroffer v. United States, 258 F.2d 379, 395–396 (C.A.8, 1958), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959); Feguer v. United States, 302 F.2d 214, 241 (C.A.8, 1962); Murdock v. United States, 283 F.2d 585, 587 (C.A.10, 1960), cert. denied, 366 U.S. 953, 81 S.Ct. 1910, 6

2. The Note to Rule 17(b) provides that "[t]he showing required by the rule to justify such relief is the same as that

now exacted by 28 U.S.C. former § 656." The Note to Rule 15(a) states that "[t]he rule continues the limitation of the stat-

L.Ed.2d 1246 (1961); United States v. Kinzer, 98 F.Supp. 6 (D.D.C.1951); United States v. Whiting, 308 F.2d 537 (C.A.2, 1962); cf. Estep v. United States, 251 F.2d 579, 582 (C.A.5, 1958).

This discretion, of course, is not absolute in the sense of "no review under any circumstances," but does leave a large degree of freedom of decision to the trial judge to determine the materiality of the evidence which the defendant seeks and the likelihood that such evidence will be forthcoming. Neither Rule 15 nor Rule 17 authorizes a general inquiry at Government expense into the circumstances of the crime with which the defendant is charged upon mere hope that favorable evidence will be unearthed; they provide for financial aid only when the defendant asserts reasonable grounds to believe that a witness has pertinent testimony to offer or that other helpful evidence is obtainable. Cf. Ingram v. United States, 114 U.S.App.D.C. 283, 315 F.2d 29.

In the opinion of the Supreme Court in Coppedge v. United States, 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21 (1961), where a similar issue arose, it was held that an indigent defendant should be allowed to appeal in forma pauperis if the appeal is "not frivolous." This case indicates that these rules should be interpreted liberally, giving the defendant the benefit of reasonable doubts. If a defendant were required to substantiate his allegations with evidence, Rules 15 and 17 would be rendered largely nugatory. Nonetheless, the determination of what applications are "frivolous" must still rest largely on the judgment of the trial court informed by the record in the case.

The facts of the present case provide an example of the manner in which relevant, though elusive, factors should be taken into account in the exercise of the district court's discretion, and indicate that there is but a remote possibility that appellant would have been able to unearth the evidence he alleges awaits him in Ft. Worth. His allegations regarding the circumstances surrounding his confession and the search

ute [28 U.S.C. former § 644] that the taking of depositions is to be restricted to cases in which they are necessary, 'in order to prevent a failure of justice.' "

Moreover, it may be significant that additional safeguards for indigent defendants were added to both rules at the same time as provisions adding or strengthening the necessity for a showing of materiality. The final version of Rule 15(a) provides that a deposition may be taken when it appears "that his [a prospective witness'] testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice." This entire clause was absent from the Preliminary and Second Preliminary Drafts of the Rules, as was subparagraph (c) of Rule 15, which authorizes the court to place these expenses upon the Government.

Two changes from the old statute that appear in Rule 17(b) seem significant. First, the old statute authorized the court to subpoena witnesses at government expense only if the witness was within the district in which the court sat or within 100 miles of the place of trial; this limitation was removed in the rule. Second, the statute required as a condition of re-

lief that the defendant submit an affidavit "setting forth that there are witnesses whose evidence is material to his defense; that he cannot safely go to trial without them; what he expects to prove by each of them; * * *." In the Preliminary Draft, the defendant, in his affidavit, was required to "state * * * the testimony which he [the witness] is expected by the defendant to give if subpoenaed, that the evidence of the witness is material to the defense and that the defendant cannot safely go to trial without the witness * * *." The Second Preliminary and Final Drafts, however, require that the defendant, in his affidavit, "*show* that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness * * *." (Emphasis added.) That is, rather than merely *state* the conclusion that the witness is necessary, the defendant is now required to *show* the district judge that this is so. It seems reasonably clear to me that the rulemakers intended the district judge to require a satisfactory showing that a witness would aid the defense before subpoenaeing him at government expense.

of his mother's home are supported only by the appellant's affidavits. Of course this is not conclusive, yet we note that since certain witnesses he desires to depose and to subpoena are close members of his family, it is not unlikely that if his allegations were true he could have provided affidavits or at least unsworn letters from these persons supporting his view of the facts.

The Government presented an affidavit of one of the police officers who arrested appellant setting forth step by step the events which ocurred in Ft. Worth, while appellant alleged only in general terms that he was beaten and that the search of the house had not been consented to. No details which might add plausibility to these allegations are provided.

Moreover, appellant's allegations are not wholly consistent with his testimony at his removal proceedings before the United States Commissioner in Ft. Worth. There, contrary to his allegations to the District Court, he testified that he had given the police officers permission to enter his mother's house and to examine his luggage and effects. Although he testified that he had confessed because he feared police brutality, he did not allege, as he did before the district court, that he actually was beaten by the police officers.

Thus, there is much to suggest that appellant would not have been able to improve his case had the district court granted him the pre-trial relief which he requested, and there is nothing other than his unsupported allegations to suggest the contrary. Additionally, the district court was able to observe appellant and it might, had it thought such inquiry helpful, have addressed questions to him, in order to substantiate or refute its conclusion in this regard.

The question in this case thus comes down to the soundness of the trial court's refusal to require the Government to assume the expenses of what can be considered no more than an investigation of the circumstances of the defendant's confession and production of the loot. It is true that if the defendant's allegations were established as true, this would substantially weaken the prosecution's case. And it is also true that the tendency of recent decisions is to alleviate the disadvantages faced by impoverished defendants.[3] But although the action of the trial court is not conclusive, it does carry great weight.[4] From the record in this case, I am convinced that the refusal of the trial judge to authorize the assistance sought—on the facts as they are shown—was by no means an abuse of his discretion. I would affirm.

---

3. Cf. Aid for Indigent Litigants in the Federal Courts, 58 Col.L.Rev. 832 (1958).

4. Cf. Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957).