Willard BENNINGS, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17840.

United States Court of Appeals
District of Columbia Circuit.

Argued June 8, 1964.

Decided Dec. 11, 1964.

Petition for Rehearing en Banc
Denied March 8, 1965.

Mr. George F. Bason, Jr. (appointed by this court), Washington D. C., for appellant.

Mr. Alan Kay, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Mr. B. Michael Rauh, Asst. U. S. Atty. at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and PRETTYMAN, Senior Circuit Judge, and BASTIAN, Circuit Judge.

JUDGMENT

PER CURIAM.

THIS CAUSE came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was argued by counsel.

ON CONSIDERATION WHEREOF it is ordered and adjudged by this court that the judgment of the District Court appealed from in this cause be, and it is hereby, affirmed.

BAZELON, Chief Judge (dissenting):

Appellant was twenty-nine years old when the District Court imposed the four-to-twelve year prison sentence for housebreaking and larceny on appeal here. He had spent fifteen of the last seventeen years in prison for various housebreaking and larceny offenses. This time he moved *pro se* for a presentence mental examination because he felt "that the repetition of these crimes stem[s] from some mental disorder * * [and he wanted psychiatric assistance] to avoid further conflict with the law." [1] The court denied this request because it did "not think there is adequate information to justify a mental examination at this time." [2] The court relied primarily on the following conclusion in a presentence report:[3]

> With each successive appearance of this young man in our Court, we

1. D.C.CODE § 24-301 (1961 ed.) provides for commitment to a mental hospital "prior to the imposition of sentence * * * for examination and observation." Section 24-106 makes available psychiatric and psychological services to District Court judges "to assist them in carrying out their duties." The sixty-day period for reconsideration of sentence, Rule 35, FED.R.CRIM.P., permits the court to refer a defendant to the custody of the Attorney General for mental examination in a procedure analogous to 18 U.S.C. § 4208(b). See generally Leach v. United States, 118 U.S.App.D.C. 197, 334 F.2d 945 (1964).

2. After imposing sentence, the court recommended "that upon the beginning of this sentence the prison authorities ex-

amine the defendant for any signs of mental disturbance." The record does not show whether this recommendation has been followed. That the court did not intend to use such examination as a presentence aid plainly appears from his failure either to order or specify a time limit for the examination. See footnote 1, *supra*.

3. We ordered the presentence report transmitted to this court as part of the record on appeal. Per Curiam Order, dated Sept. 4, 1964. See Klingstein v. United States, 217 F.2d 711 (4th Cir. 1954); Smith v. United States, 223 F. 2d 750 (5th Cir. 1955); Stephan v. United States, 133 F.2d 87 (6th Cir. 1943).

have less to add to the evaluations previously submitted. He is now 29 years of age and he is to be sentenced on this occasion, having been found guilty of housebreaking. For a relatively young man, he shows an extremely lengthy criminal record and a pronounced larcenistic bent. If there were some gross and obvious defect in his personality or his physique which would preclude his making an honest living, such a record might be understandable. However, we have uncovered no such defect.[4]

This report does not indicate what efforts, if any, were made to uncover "such defect." And nowhere in the record does it appear, for example, whether psychiatric or psychological data were obtained by using facilities available under District of Columbia Code § 24–106,[5] or from the records of the numerous institutions of appellant's previous confinements, or from interviews with appellant's family or associates. Nor does it appear either that the probation officer

was qualified to make his own psychological evaluation or that the court inquired of the basis for his finding of "no such defect."

The trial court is given wide discretion in sentencing because it alone can command "the fullest information possible concerning the defendant's life and characteristics."[6] In Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the Supreme Court invalidated a sentence based on misinformation about a defendant because of the absence of counsel who "would have been under a duty to prevent * * * the careless * * * pronouncement of sentence" and the failure of the sentencing court to engage in a "scrupulous and diligent search for truth" about the defendant. Due process was violated, the Court held, not by the "error in resolving a question of fact" but because no adequate effort was made to verify the information upon which the court relied in imposing sentence. 334 U.S. at 740–741, 68 S.Ct. at 1255.[7] In the

---

4. Any possible grounds for confidentiality of presentence reports—especially to protect sources of information—are plainly not applicable to the matter contained in this excerpt. Compare Rule 32(c) (2), Second Preliminary Draft of Proposed Amendments to Rules of Criminal Procedure for the United States District Courts, 34 F.R.D. 411, 437–38 (1964); Model Penal Code § 7.07(5) (Proposed Official Draft 1962), and Comment 54–55 (Tentative Draft No. 2, 1954).

5. This court has noted that "* * * the United States Probation Service has not fully availed itself of psychiatric and psychological information. See Pye, Shadoan & Snee, A PRELIMINARY SURVEY OF THE FEDERAL PROBATION SYSTEM, Geo.U. Law Center 24 (1963)." Leach v. United States, 118 U.S.App.D.C. 197, 334 F.2d 945, 947 n. 4 (1964).

6. Williams v. People of State of New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). See, e.g., Symposium on Appellate Review of Sentences, 32 F.R.D. 249, 262, 286, 297–298 (1962); Parsons, "Aids in Sentencing," Institute on Sentencing for United States District Judges, 35 F.R.D. 381, 423, 425–426 (1964).

7. In Williams, the Supreme Court cited with approval Judge Schwellenbach's statement:

"The knowledge of the life of a man, his background and his family, is the only proper basis for the determination as to his treatment. There is no substitute for information. The sentencing judge in the Federal court has the tools with which to acquire that information. Failure to make full use of those tools cannot be justified." 337 U.S. at 249–250 n. 14, 69 S.Ct. at 1084. In Peters v. United States, 113 U.S.App. D.C. 236, 307 F.2d 193 (1962), we held that sentence should not have been imposed on youthful offenders without first obtaining a presentence report. This court en banc held in Jones v. United States, 117 U.S.App.D.C. 169, 327 F.2d 867 (1963), that the sentencing court must receive and consider the results of a mental examination before it could exercise its statutory discretion to reimpose a death sentence. See United States v. Wiley, 267 F.2d 453 (7th Cir. 1959), where the appellate court remanded because the sentencing court refused to grant defendant's request for a presentence investigation or to hold a probation hearing. See also United States v. Wi-

present case court-appointed counsel did not know of appellant's *pro se* motion for mental examination until the morning of sentencing and stated that he had "nothing to add to that motion" [8] And the court made no effort to supply the missing information by requiring it from the probation officer. Since no information is shown to support the probation officer's bare assertion of "no such [mental] defect," there is no adequate assurance of its accuracy.[9]

In 1960 the United States Probation Office for the District of Columbia referred fifty-one convicted defendants in the United States District Court to the District of Columbia Legal Psychiatric Services for presentence evaluation; in 1961—thirteen, in 1962,—three,[10] and in 1963—nine [11] were so referred. In each of those years there were approximately one thousand convicted defendants. This evidences an almost total failure to seek relevant behavioral data. Whether this failure is attributable to the District Court or the probation office, it hardly instills confidence that a "scrupulous and diligent search" was made in the present case to uncover any "[mental] defect." [12] "Such a result, whether

ley, 278 F.2d 500 (7th Cir. 1960); Note, 109 U.Pa.L.Rev. 422 (1961).

8. Compare my concurring opinion in Jackson v. United States, 118 U.S.App.D.C. 341, 336 F.2d 579 (1964).

9. THE DESK BOOK FOR SENTENCING II–6–7 (1962), prepared by the Committee on the Administration of Criminal Law, Judicial Conference of the United States, warns:

"Too often a presentence report is a mere recital of facts about such tangible items as names of relatives, employment, addresses, church affiliation, and residence without any careful analysis of the defendant's needs, attitudes and concerns, his outlook on life, and his conception of his own position with respect to the difficulty in which he is involved. It is not requiring too much of a trained probation officer to require that he supply the court with a thorough statement of the more subjective elements in the background of the defendant and, even more important, that he evaluate their meaning for the court.

"Probation officers are the eyes and ears of the court in many areas. * * * When these functions are performed properly, the judge has a sound basis for his judicial determination of an appropriate disposition. Judges can determine the kind and quality of the presentence investigation reports which they receive. They should not be satisfied with less than the best."

At numerous Sentencing Institutes there has been agreement that fullest information regarding the defendant is essential to sentencing, and that presentence reports presenting such information should be scrupulously verified. See Institute on Sentencing for United States District Judges, 35 F.R.D. 381. 423–458 (1964); Sentencing Institute and Joint Council for the Fifth Circuit, 30 F.R.D. 185, 244–245, 248 (1961); Pilot Institute on Sentencing, 26 F.R.D. 231, 324, 328 (1959). The consensus was expressed at the Fifth Circuit Institute by Judge Simpson:

"I strongly underscore what [a previous speaker] had to say about getting verified and not inaccurate information [in the presentence report] and additionally having those sources listed * * * [which] will enable you to tell whether or not all the sources that might occur to you have been consulted by the officer and even if they have been consulted you may want the original information rather than the officer's summary of it." 30 F.R.D. at 248.

10. Leach v. United States, 115 U.S.App. D.C. 351, 354 n. 5, 320 F.2d 670, 673 n. 5 (1963).

11. Letter to Chief Judge David L. Bazelon from Dr. David A. Lanham, Chief of the Legal Psychiatric Services, dated March 25, 1964. Additionally, in 1963, ten convicted defendants were referred for presentence evaluation to the Legal Psychiatric Services by specific request of individual District Court judges.

12. The Federal Probation System's use of mental evaluation in presentence investigations is similarly meager. In 1962 the Chief of the Probation Division of the Administrative Office, United States Courts, stated that only $5,000 was spent each year for "psychiatric help" in the presentence investigations and supervisory functions of the Probation System. Pye, Shadoan & Snee, Preliminary Survey of the Federal Probation System, Geo.U.Law Center 24 (1963). In that

caused by carelessness or design, is inconsistent with due process of law * *." 334 U.S. at 741, 68 S.Ct. at 1255.

Furthermore, even if counsel had attempted to support appellant's request for a mental examination, the court would still have been obligated independently to determine whether there was factual basis for the probation officer's conclusion. In *Townsend* the sentencing court relied on misinformation of two previous convictions which defendant's counsel could have disproved by examining public court records. Here appellant's counsel could have supplied the missing information only by expert assistance which was not available because of appellant's indigency; such assistance was, however, available to the probation officer. To avoid invidious discrimination between rich and poor in information available to aid sentencing,[13] the court must satisfy itself that the probation officer had factual basis for his critical finding that there was "no such [mental] defect."

In Leach v. United States, 118 U.S. App.D.C. 197, 334 F.2d 945 (1964), the sentencing court rested denial of a presentence mental examination on the fact that the probation officer failed to recommend it. On appeal we held that the court could not rely on the probation officer's conclusion without independent consideration of the facts underlying that conclusion. Upon our consideration of the facts revealed in the probation officer's report and furnished by counsel, we found insufficient support for the probation officer's conclusion and we directed the court to order a mental examination. In the present case, however, I would not reach the question whether the court was required to grant the request for a mental examination. I would decide only that the court may not deny an examination on the basis of a probation officer's report without first satisfying itself that the probation officer had made reasonable efforts to uncover "such [mental] defects." I would remand this case to the District Court for that purpose.

year, presentence investigations alone involved 31,867 individuals. The Chief of the Probation Division also stated, without details, that some psychiatric facilities from the Veterans' Administration, the Public Health Service and other sources were also available to the System to a limited extent.

After publication of the above Survey, the following statement appeared in the 1964 Annual Report of the Administrative Office of the United States Courts (Preliminary Draft):

"Psychiatric facilities were provided [for the Federal Probation System] by the Federal Bureau of Prisons institutions, the Veterans Administration, the United States Public Health Service, the Vocational Rehabilitation Administration, local and state hospitals, local and state court clinics, county and municipal health departments, universities, and psychiatrists in private practice." Report, at 76.

The Report further indicated that 620 presentence psychiatric examinations were made during the first nine months of 1964 at the request of probation officers, and that, by the end of 1964, 775 such examinations would be made. (Report, at 75.) Since there will be approximately 26,098 presentence investigations during 1964 (Report, at 69), it appears that more than 97 per cent of the investigations will not include psychiatric or psychological evaluations. If the facilities now available to the Federal Probation System are adequate, then their use is desperately inadequate. If, on the other hand, the available facilities are able only to provide examinations in less than 3 per cent of the presentence investigations, then the facilities are desperately inadequate.

13. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Greenwell v. United States, 115 U.S.App.D.C. 44, 317 F.2d 108 (1963); Leach v. United States, 118 U.S.App.D.C. 197, 334 F.2d 945 (1964).