UNITED STATES of America,
Plaintiff-Appellee,

v.

James Lee HAZELRIGG, Defendant-Appellant.

No. 20065.

United States Court of Appeals,
Eighth Circuit.

Aug. 17, 1970.

2. Sec. 65 of the Illinois Civil Practice Act, Ill.Rev.Stats., 1965, Ch. 110, § 65.

3. Bruske v. Arnold, 44 Ill.2d 132, 254 N. E.2d 453 (1969) ; Borries v. Z. Frank, 37 Ill.2d 263, 226 N.E.2d 16 (1967) ; Freeman v. CTA, 33 Ill.2d 103, 210 N.E. 2d 191 (1963) ; Pendl v. United Parcel Service, 105 Ill.App.2d 167, 245 N.E.2d 77 (1969) ; Houston v. Leyden Motor, 102 Ill.App.2d 348, 243 N.E.2d 293 (1968) ; King v. Chicago, 53 Ill.App. 2d 484, 202 N.E.2d 839 (1964) ; Bates v. DeBose, 14 Ill.App.2d 574, 145 N.E. 2d 118 (1957) ; Stevens v. Moore, 318 Ill.App. 228, 47 N.E.2d 498 (1943) ; Luner v. Gellis, 314 Ill.App. 659, 42 N.E. 2d 313 (1942).

BRIGHT, Circuit Judge.

James Lee Hazelrigg appeals his Dyer Act (18 U.S.C. § 2312) conviction on information that he knowingly transported a stolen motor vehicle from Ypsilanti, Michigan, to St. Louis County, Missouri. After the jury returned a verdict of guilty, the trial court sentenced the defendant to five years imprisonment under the custody of the Attorney General.

■ As the sole issue on this appeal, appellant questions whether the evidence sustains the conviction. In that connection, he argues that he purchased and did not steal the vehicle in question and, further, that the prosecution failed to present any proof of criminal intent on his part. The record offers little support for these contentions, and we affirm the conviction.

Briefly, the evidence establishes that Hazelrigg agreed to purchase a 1969 red Pontiac convertible from a Ypsilanti car dealer and to pay cash for the automobile. He represented that his wife, a hospital employee, would deliver the money to cover the proposed purchase at Noon that day. Hazelrigg executed necessary documents for registration of title in his own name. Pending completion of the sale, he asked the salesman for permission to test drive the automobile in order to verify that he was purchasing the red Pontiac with disc brakes and not a similar model lacking disc brakes. The automobile dealer's salesman had demonstrated both models to Hazelrigg a few days earlier. Using keys given him by the salesman, Hazelrigg drove off with the vehicle. Like the jilted bride, the car dealer waited in vain. Hazelrigg did not return the automobile; no wife brought money to cover the purchase. The dealer, in attempting to locate Hazelrigg, discovered the latter had furnished a false address. He could find no wife. A Missouri Highway Patrolman located Hazelrigg and the Pontiac nine days later in St. Louis County, Missouri. The arrest and prosecution followed.

Charles Alan Seigel and Bernhardt C. Drumm, Jr., St. Louis, Mo., for appellant.

Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., and Robert B. Schneider, Asst. U. S. Atty., for appellee.

Before VOGEL, HEANEY and BRIGHT, Circuit Judges.

Hazelrigg testified that he intended to move to the address he had submitted to the automobile dealer; that his fiancee, not wife, was to pay for the car; that during the testing of the car he stopped at a tavern and got drunk and that later he found himself sixty miles away in Toledo, Ohio. He asserted that he had purchased the car in good faith, that he tried to contact the automobile dealer from Toledo but reached no one by telephone. He admitted driving the car into Kentucky and into Missouri. Hazelrigg's misrepresentations in connection with obtaining possession of the vehicle and the manner of his use of the automobile for the next nine days furnish an ample basis for a jury determination of guilt and serve to establish his transportation of a "stolen" automobile. The term "stolen", as used in the statute

> * * * includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny. United States v. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed.2d 430 (1957).

For recent applications of this principle, see United States v. Ellis, 428 F.2d 818 (8th Cir., July 17, 1970); Stewart v. United States, 395 F.2d 484, 490 (8th Cir. 1968).

We consider the additional contention pressed upon us at oral argument that the trial judge treated defendant unfairly in refusing to procure a presentence investigation report as authorized by Rule 32, Fed.R.Crim.P., 18 U.S.C.A., which provides, in pertinent part:

> The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. Fed.R.Crim.P. 32(c)(1).

A presentence report serves the important functions of aiding the court in determining an appropriate sentence for the offender and in later furnishing background information for the purpose of assisting penal authorities in rehabilitation efforts directed toward the prisoner.[1]

The Supreme Court recognizes the necessity for such report to aid the trial judge in selecting an appropriate sentence under the modern philosophy of penology "that the punishment should fit the offender and not merely the crime." Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

■ Standards promulgated as a guide for sentencing call for judges to use presentence reports in every felony case. See ABA Standards Relating to Sentencing Alternatives and Procedures §§ 4.1–4.5, 5.5 (Approved Draft 1968); NCCD, Council of Judges, Model Sentencing Act, §§ 2, 3 (1963). Significantly, the ABA's Commentary on these standards states, in part:

> The President's Crime Commission recently recommended that "all courts

---

1. A monograph prepared by the Administrative Office of the United States Courts summarizes the functions and objectives of the presentence order:

> "The presentence investigation report is a basic working document in judicial and correctional administration. It performs five functions: (1) to aid the court in determining the appropriate sentence, (2) to assist Bureau of Prisons institutions in their classification and treatment programs and also in their release planning, (3) to furnish the Board of Parole with information pertinent to its consideration of parole, (4) to aid the probation officer in his rehabilitative efforts during probation and parole supervision, and (5) to serve as a source of pertinent information for systematic research." Administration Office of the United States Courts, Division of Probation, Publication No. 103, The Presentence Investigation Report, at 1 (1965).

should require presentence reports for all offenders * * *."

\*    \*    \*    \*    \*    \*

But the value of the presentence report continues beyond the sentencing decision. If the defendant is indeed placed on probation, the supervising officer can be saved the need to engage in independent investigation to develop much of the information on which to base his initial relationship with the offender. The same, of course, holds true for the institutional officials in the event of a commitment. Both the initial classification and treatment of the defendant, as well as subsequent decisions such as parole, can be immeasurably aided—by narrowing the need for independent investigation—by a properly prepared presentence report. See Report of the President's Commission on Crime in the District of Columbia, Appendix, p. 690 (1966); Wallace, Aids in Sentencing, 40 F.R.D. 433, 434 (1965). See also Newman, conviction: The Determination of Guilt or Innocence Without Trial 14–18 (1966). ABA Sentencing Alternatives and Procedures, *supra*, at 204–205.

The language of Rule 32 mandates a presentence report "unless the court otherwise directs", which appellate courts construe to be discretionary in effect. King v. United States, 410 F.2d 1127 (9th Cir. 1969); United States v. Fannon, 403 F. 2d 391 (7th Cir. 1968), vacated on other grounds, 394 U.S. 457, 89 S.Ct. 1224, 22 L.Ed.2d 416 (1969); United States v. Williams, 254 F.2d 253 (3d Cir. 1958); see United States v. Garfinkel, 285 F.2d 548 (7th Cir. 1960), cert. denied, 365 U.S. 879, 81 S.Ct. 1031, 6 L.Ed.2d 192 (1961). Such discretionary power, however is not unbridled. Leach v. United States, 115 U.S.App.D.C. 351, 320 F.2d 670 (1963); United States v. Wiley, 267 F.2d 453, 458 (7th Cir. 1959) (concurring opinion). See also United States v. Wiley, 278 F.2d 500 (7th Cir. 1960) (second appeal), and the second and third round of Leach's litigation in Leach v. United States, 118 U.S.App.D.C. 197, 334 F.2d 945 (1964); Leach v. United States, 122 U.S.App.D.C. 280, 353 F.2d 451 (1965), cert. denied, 383 U.S. 917, 86 S.Ct. 911, 15 L.Ed.2d 672 (1966).

■ The evidence at trial discloses Hazelrigg's instability—a high school dropout, some earlier psychiatric care—and his inability or unwillingness to reform, evidenced by several convictions for non-violent crimes, forgery and theft, as well as violation of parole and probation. These facts suggest the need for a presentence investigation. They do not, however, demonstrate that the trial court erred in directing the contrary. We note that Hazelrigg's counsel, in making his request to the district court for such report, suggested that perhaps it would provide "some help for him while he is in prison." The statement of that limited objective and the fact that upon entry into the federal prison system, Hazelrigg undoubtedly will undergo some classification and physical and mental examinations for the purpose of aiding in his rehabilitation, see Leach (I), supra, 115 U.S.App. D.C. 351, 320 F.2d 670, 674, and Leach (II), supra, 334 F.2d 945, 960, 118 U.S. App.D.C. 197 (Bastian, J., dissenting), support our conclusion that the trial court committed no prejudicial error in passing sentence upon the defendant without the benefit of a presentence report.

Affirmed.