**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**LeRoy WILEY, Defendant-Appellant.**

**No. 12515.**

United States Court of Appeals
Seventh Circuit.

May 20, 1959.

Rehearing Denied June 25, 1959.

Hastings, Circuit Judge, dissented
in part.

R. Eugene Pincham, Chicago, Ill.,
Charles B. Evins, Glenn C. Fowlkes,
Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Charles
R. Purcell, Jr., Asst. U. S. Atty., Chicago,
Ill., John Peter Lulinski, Asst. U. S.
Atty., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and
SCHNACKENBERG and HASTINGS,
Circuit Judges.

SCHNACKENBERG, Circuit Judge.

LeRoy Wiley, herein referred to as
defendant, appeals from a judgment of
the district court upon a finding of guilty,
entered following a trial by the court
without a jury, by the terms of which

judgment defendant was sentenced to imprisonment for a period of three years.

Defendant's conviction was on Count II of an indictment which charged him and Ulysses McGhee, Joseph Helen, Joseph M. Kelley and Roman Jackson with unlawfully, willfully, knowingly and feloniously having in their possession certain dresses, unlawfully stolen while moving in an interstate shipment and known by them to have been stolen; in violation of 18 U.S.C.A. § 659.[1]

We state certain controlling facts established by the evidence.

There was a theft of goods in interstate commerce on October 23 or 24, 1957. A truck containing the stolen goods was first seen by Federal Bureau of Investigation agents about 10:45 A.M. October 24, 1957, when it was parked at the rear of a house near 57th and La Salle Streets, in Chicago. The rear doors were partially open, and five men were standing behind it, some of whom then entered an automobile and the others got into the truck. Both vehicles then proceeded to La Salle Street and Chicago Avenue, where they parked. Defendant was in the vicinity of the truck while it was on Chicago Avenue, when he was first observed to be a participant in the activity. He was seen to reach into the automobile and to remove from it a large carton marked with the name, "Apex Consolidators, Chicago, Illinois," the firm from which the merchandise in question had been stolen. Although defendant was not again observed at that location, the automobile made several trips during the afternoon to and from the place where the truck was parked. Thereafter, codefendant McGhee drove the truck back to 57th and La Salle Streets. Defendant was next seen at 5646 South La Salle at or about 10 A.M. on October 25th, leaving the rear of 5646 South La Salle Street, and *accompanying McGhee to the truck where McGhee entered the rear while defendant remained on the ground*. Aft-

er five minutes both defendant and McGhee went back into the house and about 11 A.M. defendant and the codefendants came out of the house and approached the truck. All ran upon the approach of a police squad car, and returned to the vicinity of the truck after they had "looked around". At that point defendant was arrested.

When taken to FBI headquarters at 11:15 A.M., defendant said that on October 24, 1957 he sought to procure a buyer or "fence" for the stolen goods, but his efforts were then unsuccessful and that one Joe Johnson then directed him to appear at the La Salle Street premises and accompany the goods to 36th and Kedzie, where a buyer was. He stated that he knew the goods were stolen and he was to receive 5%· of the sale proceeds.

Defendant offered no evidence at the trial.

█ 1. In this court his counsel contend that the evidence is insufficient to sustain a finding of guilty beyond a reasonable doubt that the defendant possessed the goods named in the indictment, either actually or constructively.

There was evidence that Ulysses McGhee, codefendant, was driving the truck, that McGhee and defendant came out of the house and walked to where McGhee opened the cargo department of the truck and got in while it contained the goods. Therefore it is clear that defendant participated in the transaction and thus assisted, aided and abetted in McGhee's felonious possession of the goods. United States v. Maroy, 7 Cir., 248 F.2d 663, 666. While a person's mere presence where an unlawful transaction takes place would not make him guilty as an aider or abettor, in the instant case defendant's activities and admissions show that he aided and abetted the unlawful possession with the purpose of helping the other defendants to procure an outlet for the stolen merchan-

---

1. Defendant was not named in Count I, which charged the defendants McGhee, Helen, and Kelley with stealing the arti- cles also mentioned in Count II, in violation of 18 U.S.C.A. § 659.

dise. United States v. Rappy, 2 Cir., 157 F.2d 964, 966.

Under the facts in this case possession by defendant does not necessarily mean physical custody. The facts show possession of stolen property by defendant with knowledge that it had been stolen.

For these reasons, the judgment insofar as it adjudged defendant guilty, is affirmed.

■ 2. However, another question is presented for our determination. Before sentence was imposed on defendant, his counsel asked the court to consider granting probation to defendant, and it was admitted by the government attorney that defendant had no prior criminal record. It was uncontradicted that he had been married for 12 years and that his family consisted of two girls. He was employed in the Bureau of Sanitation of the City of Chicago, where he had worked almost 5 years. The court responded, saying in part:

"* * * Had there been a plea of guilty in this case probably probation might have been considered under certain terms, but you are all well aware of the standing policy here that once a defendant stands trial that element of grace is removed from the consideration of the Court in the imposition of sentence."

18 U.S.C.A. § 3651, provides:

"Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States, except in the District of Columbia, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

"Probation may be granted whether the offense is punishable by fine or imprisonment or both. * * * *"

Authority to grant probation is vested in any court having jurisdiction to *try* offenses against the United States. The would "try" means "to settle by a test; specifically, to try conclusions by a trial at law." Webster's New International Dictionary, 2nd Ed. As used in law, the verb "to try" means to investigate judicially, as a matter of question of fact put in issue in a cause; also, to subject to judicial trial for crime. 90 C.J.S. p. 961.

It will be noted that the Act extends to all defendants (with certain exceptions not here relevant) against whom a judgment of conviction is entered. It is obvious that such a judgment may follow either a plea of guilty or a trial on a plea of not guilty. However, under the standing policy announced by the district judge in this case, he does not consider an application for probation by a defendant who pleads not guilty and stands trial. While, in considering an application for probation, the court's decision on whether or not probation shall be granted in any particular case, is seldom set aside except for abuse of discretion, the intention of Congress, under the Probation Act, requires that an application for probation by a defendant convicted of the offense involved in this case must be received and acted upon by the court, regardless of whether the conviction is based upon a plea of guilty or follows a trial. To hold otherwise, would be tantamount to saying that a district court can narrow the area for probation established by Congress. Of course, this cannot be true.

Within the area defined by Congress, a district judge is required to act upon applications for probation made by persons convicted of crime (except those punishable by death or life imprisonment). However, he has no authority to either expand or reduce that area.

It is significant that the court, in Burns v. United States, 287 U.S. 216, 220, 53 S.Ct. 154, 77 L.Ed. 266, when speaking of the careful, humane and compre-

hensive consideration necessary to individualize each case arising under the Act, makes no distinction between offenders who have pleaded guilty and those who have stood trial. The court, 287 U.S. at 223, 53 S.Ct. at page 156, said:

> " * * * While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice."

Nothing which we say is to be construed as barring the district judge, who entertains an application for probation, from considering, *inter alia*, whether a defendant who pleads not guilty has done so when he has only a frivolous defense, an important effect of the trial being to merely burden the court and congest its calendar. However, in the case at bar, the defense certainly was not frivolous nor does it appear to have been presented in bad faith.

Judge Hastings, worthy colleague, in his partial dissent, which follows this opinion, concludes that "the court was not satisfied that the ends of justice and the best interests of the public and the defendant would be served by admitting defendant to probation in this case. * * * In this case defendant's counsel moved for a presentence investigation which motion the court denied; and, after hearing defendant in person and by counsel in mitigation, the court made 'the sentence less than I otherwise would.' * * * *The motion was received and acted upon unfavorably.*"

We should not lose sight of the fact that, under 18 U.S.C.A. rule 32 of the Federal Rules of Criminal Procedure, two separate duties were imposed upon the district court. Rule 32(a) required that, before imposing sentence, the court should afford an opportunity to defendant to present any information in mitigation of punishment. Rule 32(e) provided that the defendant may be placed on probation as provided by law.

A reading of the colloquy, more fully set forth by Judge Hastings, emphasizes that the court made it clear that the defendant, who had stood trial, would not be considered for probation and that the court was considering the information supplied only for the purpose of mitigation of the punishment about to be imposed. The court's consideration of matters offered in mitigation should not be confused with defendant's request for probation, a request which the court made crystal clear he was not even considering because of his "standing policy" to the effect that "that element of grace is removed from the consideration of the court" once a defendant stands trial. It is certain that the motion for presentence investigation, 18 U.S.C.A. rule 32 (c), and probation, was never received or acted upon by the district court.

Judge Hastings refers to the court's statement that he was making the sentence less than he otherwise would. While the severity of the sentence imposed on the defendant is irrelevant in deciding this appeal, we must point out the disparity between the sentence imposed by the court on Wiley, an *accessory*, and McGhee, *the principal*, driver of the truck and the most active participant in the crime. According to the uncontradicted statement of the government attorney, appearing in the record, McGhee had four prior felony convictions, was the ringleader in this matter, and, subsequent to this offense and while out on bond, committed two other similar offenses. Yet he was sentenced to prison for *two* years, while defendant Wiley, who had no prior criminal record, was sentenced to prison for *three* years.

For these reasons this cause is remanded to the district court with instructions that it perform the functions imposed upon it under the Probation Act, as herein indicated.

Judgment affirmed and cause remanded to District Court for consideration of defendant's application for probation.

HASTINGS, Circuit Judge (concurring in part and dissenting in part).

I am in complete accord with and concur in that part of the majority opinion

affirming "the judgment insofar as it adjudged defendant guilty."

However, I find myself in disagreement with that part of the majority opinion remanding the cause to the district court "with instructions that it perform the functions imposed upon it under the Probation Act," and I respectfully dissent therefrom.

After quoting part of a statement made by the trial court in response to defendant's request for probation, the majority holds that the court arbitrarily refused to consider defendant's application for probation. The effect of the remandment is to require the trial court to again receive and act upon the application for probation and in so doing to give consideration to factors other than defendant's election to plead not guilty and stand trial. I do not believe that the record in this case justifies such a remandment.

The record shows that the defendant waived a jury trial, did not introduce any evidence in his own defense and was found guilty of knowing possession of goods stolen from an interstate shipment under Section 659 of Title 18 U. S.C.A. Following the verdict of guilty as charged, the following colloquy was had:

"The Court: * * * I will hear you in mitigation. Anything you care to say first before the defendant speaks?

"Mr. Evins [defendant's counsel]: No.

"The Court: Anything from the Government. Is there a prior criminal record?

"Mr. Grady [Government counsel]: No prior criminal record. Are you interested in the value of all this merchandise?

"The Court: I think it has been stipulated it is above the value of one hundred dollars. That is all I am concerned with. Have you anything on this defendant as to his record? Have we any FBI fingerprint record?

"Mr. Evins: There are no prior convictions, your Honor.

"The Court: There are none?

"Mr. Grady: No, I apparently left them in my office by mistake. [sic]

"The Court: Very well. Anything the defendant cares to say? Anything you want to say on behalf of the defendant?

"Mr. Evins: *I would like to make a motion for a presentence investigation.*

"The Court: No, I ordinarily don't do that when I hear the evidence in the case. I ordinarily do where there is no prior record. Where the defendant stands trial it is well-known in this Court I proceed to sentence immediately after the trial. *I will hear anything you care to say as to his family situation and his background and his prior history.*"

[Thereupon, defendant testified as to his residence, marriage, family, employment and that he had never served any time in any penal institution.]

"The Court: Any questions of the defendant?

"Mr. Grady: No.

"The Court: Is there anything you want to say before the imposition of sentence?

"Mr. Evins: Yes, Judge. I would like to say this, that you have heard the evidence that we have offered here in mitigation and in view of the fact that this defendant has no previous record of any kind and that in view of the further fact that he is married and he has a family and he is living with his wife, supporting his family, and he has a good job out of which he is supporting his family, I feel that justice could be served in this case if the Court sees fit to put him on probation for a period of time, and I am asking the Court to show him some leniency and consideration because of those facts, because of his family and be-

cause of the fact he just got a new-born baby and as I understand it, he is the main and only support of that family.

"I am asking the Court at this time if he wouldn't consider granting probation.·

"The Court: Those are the facts that the defendant should have considered prior to committing the offense.

\* \* \* \* \* \*

"The Court: In view of the fact that the trial was expedited by waiving a jury and by stipulation of the various items that expedited the proof *I make the sentence less than I otherwise would. It is, however a serious crime, and it is a case for the imposition of a sentence, either on a plea of guilty or on a trial.* Had there been a plea of guilty in this case probably probation might have been considered under certain terms, but you are all well aware of the standing policy here that once a defendant stands trial that element of grace is removed from the consideration of the Court in the imposition of sentence.

"*Taking into consideration the various factors that you have referred to—and that I have referred to, I make the sentence less than I otherwise would, but a sentence must be imposed.*

"On the judgment of guilty heretofore rendered the defendant is sentenced to the custody of the Attorney General of the United States to be incarcerated in a penitentiary of the United States for a term of three years." (Emphasis added.)

The Probation Act, 18 U.S.C.A. § 3651, quoted in pertinent part in the majority opinion, provides that the trial court, "when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, *may* \* \* \* place the defendant on probation \* \* \*." (Emphasis added.) Thus, when the trial court is satisfied that these requirements are met it may, in its discretion, grant probation. A fair reading of the quoted portions of the record as above set out indicates to me that the court was not satisfied that the ends of justice and the best interests of the public and the defendant would be served by admitting defendant to probation in this case. I cannot in good conscience find any such gross abuse of discretion here that would justify the action taken by the majority.

No case has been brought to our attention wherein a court of appellate review has ever set aside an order refusing to grant probation. In this case defendant's counsel moved for a presentence investigation which motion the court denied; and, after hearing defendant in person and by counsel in mitigation, the court made "the sentence less than I otherwise would." The only thing left undone was to order a presentence investigation. The court had before it all factors relating to defendant personally in the light most favorable to defendant, having heard defendant and his counsel in person. It also had full knowledge of the nature of the offense. *The motion was received and acted upon unfavorably.* To hold that, under the circumstances, it is mandatory for a trial court to go further and order a presentence investigation and then "act upon" the application for probation reads into the Probation Act a requirement I do not find there. Assuming that, conceivably, in some case, there might be certain extreme circumstances amounting to a manifest abuse of discretion, I hold to the view that this is not such a case.

I would affirm the judgment in its entirety.