**UNITED STATES of America**

v.

**Donald J. SHEPPARD.**

**Crim. Nos. 84–50012–03, 5:85–00001.**

United States District Court,
S.D. West Virginia.

June 24, 1985.

Mary S. Feinberg, Asst. U.S. Atty., Charleston, W.Va., for U.S.

Douglas J. Kinz, Clifton, N.J., for defendant.

## MEMORANDUM ORDER

HALLANAN, District Judge.

### I. *Introduction*

The Defendant, Donald J. Sheppard, previously entered guilty pleas to (1) Count Six of an eight count indictment, charging him with aiding and abetting in the filing of false and fraudulent income tax returns on behalf of Brandywine Associates under 26 U.S.C. § 7206(2) and 18 U.S.C. § 2, and (2) a one-count information, charging him with aiding and abetting in the filing of false and fraudulent tax returns on behalf of NRG Coal Associates 1979–I under 26 U.S.C. § 7206(2) and 18 U.S.C. § 2. Pending before the Court is Defendant's Rule 35(b), Fed.R.Crim.P. motion for a reduction of sentence which was filed in a timely manner on June 7, 1985, the sentence having been imposed on February 15, 1985. The Defendant filed a brief and affidavits in support of his motion and the Government filed a brief in opposition to the motion; a hearing was held on June 15, 1985, at which both sides were represented. A brief recitation of the facts and circumstances of this case is necessary in order to develop a clear understanding of the Defendant's primary argument for a reduction of sentence, namely that the sentence imposed on Mr. Sheppard was unduly harsh when compared to that imposed on his equally or more culpable co-defendant, Mr. Huber (Karl Huber, Jr.).

### II. *Factual Background*

The indictment to which Mr. Sheppard pleaded guilty stemmed from his employment from the fall of 1976 to the summer of 1978 as President of the Boden Mining Corp. and Vice-President of the Boden Coal Co. at a salary of approximately $1,000 per week, plus expenses. Boden Mining Corp. was established (and owned) by Karl Huber, Jr., and Karl Huber, Sr., of Newark, N.J., for the purposes of acquiring coal leases and providing coal reserve reports to assist the Hubers in promoting and syndicating coal tax shelters through a limited partnership known as Brandywine Associates. Although the parties are in dispute as to whether Boden Mining Corp. actually mined any coal, they agree that Sheppard's role in the fraudulent tax scheme consisted of obtaining and/or preparing coal reserve reports with substantially overstated reserves for use in the offering memoranda distributed by the Hubers to investors seeking information about their coal tax shelter limited partnerships. The parties agree that Sheppard did not prepare or file the false income tax returns for the limited partnerships, that with one possible exception he did not solicit investors for Brandywine Associates, and that the pecuniary benefit he received from the syndication of the fraudulent tax shelters was limited to his salary. In short, Mr. Sheppard was a salaried employee in a fraudulent operation that was conceived, directed, and owned by the Hubers.

The information to which Mr. Sheppard pleaded guilty stemmed from his employment from the summer of 1978 to the spring of 1981 as Vice-President of Natural Resources Group (NRG) Coal Corp. NRG Coal Corp. was established (and partially owned) by David Walsh and Robert Goldberg for the purposes of acquiring coal leases and mining equipment, and providing coal reserve reports to assist Walsh and Goldberg in promoting and syndicating coal tax shelters through a limited partnership known as NRG–1979–I. As with the previous conspiracy, Sheppard's role consisted of obtaining and/or preparing coal reserve reports with inflated reserves for use in the offering memoranda disseminated to investors who were interested in the NRG coal tax shelter limited partnerships.

Mr. Sheppard was aware in both instances that the reports that were included in the offering memoranda would be used by investors to avail themselves of tax deductions to which they were not entitled. After offering a guilty plea on the indictment and information counts, Mr. Sheppard was sentenced to a prison term of three years under 18 U.S.C. § 4205(a) and fined $5,000 on the indictment count, and to five years probation and fined $5,000 on the information count, to run consecutively with the sentence imposed pursuant to the indictment count. The primary basis for Sheppard's Rule 35(b) motion is that his co-defendant, Karl Huber, Jr., who pleaded guilty to a more serious offense (Count One of an eight count indictment charging him with conspiring to defraud the Internal Revenue Service under 18 U.S.C. § 371), was given a more lenient sentence of five years probation, fined $5,000 and ordered to perform 2,000 hours of public service.

### III. *Jurisdiction of the Court*

As stated earlier, Defendant's Rule 35(b) motion was timely filed on June 7, 1985. However, the Court's Order on the motion is being entered after the expiration of the 120 day period specified in Rule 35(b). Accordingly, a threshold question exists as to whether this Court still has jurisdiction over the motion.

Rule 35(b) provides in relevant part that "[t]he court may reduce a sentence within 120 days after the sentence is imposed ..." Although a literal reading of the Rule would seem to require a District Court to issue an Order within 120 days of the imposition of a sentence, the Courts have not given Rule 35(b) so harsh a construction. Instead, many appellate courts have recognized that so long as a Defendant's motion is *filed* before the expiration of the 120 day time period of Rule 35(b), a District Court may *rule upon* such a motion within a reasonable period after the 120 days have expired. *United States v. Stollings,* 516 F.2d 1287 (4th Cir.1975); *United States v. Janiec,* 505 F.2d 983 (3rd Cir.1974); *United States v. Mendoza,* 581 F.2d 89 (5th Cir.

1978); *United States v. Williams,* 573 F.2d 527 (8th Cir.1978); *United States v. Polizzi,* 500 F.2d 856 (9th Cir.1974), *cert. denied* 419 U.S. 1121, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). Dicta in *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) to the effect that Rule 35(b)'s time period is jurisdictional and cannot be extended cast doubt on the vitality of the above construction of the rule. However, numerous Circuit Courts of Appeal recently have reaffirmed the concept that, provided a Rule 35(b) motion is filed in a timely manner, a District Court may rule on such a motion within a reasonable time after the expiration of the 120 day period. *Diggs v. United States,* 740 F.2d 239 (3rd Cir.1984); *United States v. Krohn,* 700 F.2d 1033 (5th Cir.1983); *United States v. DeMier,* 671 F.2d 1200 (8th Cir.1982); *United States v. Smith,* 650 F.2d 206 (9th Cir.1981).

Post-*Addonizio* authority that, on a superficial or cursory reading adopts a contrary interpretation of Rule 35(b), is distinguishable. In *United States v. Schafer,* 726 F.2d 155 (4th Cir.), *cert. denied* — U.S. ——, 104 S.Ct. 3512, 82 L.Ed.2d 820 (1984), the trial court's delay in ruling on Defendant's Rule 35(b) motion was held unreasonable because the court intentionally waited over seven months until after the Parole Commission had acted in order to review, and overturn, its decision concerning a presumptive parole date. The *Schafer* court's holding was based not on the fact that the trial judge acted on a Rule 35(b) motion more than 120 days after the sentence was imposed, but solely on the unreasonable *length and purpose* of the trial judge's delay; *Schafer* did not overrule the Fourth Circuit's prior holding in *Stollings* that a District Judge "retains jurisdiction to act upon a timely motion after the expiration of the 120 day period for such reasonable time, as under the circumstances, is required for its consideration and disposition." 516 F.2d at 1289–90. Similarly, the recent decisions in *United States v. Kajevic,* 711 F.2d 767 (7th Cir. 1983), *cert. denied,* — U.S. ——, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984) and *United States v. Pollak,* 655 F.2d 243 (D.C.Cir.

1980) held unreasonable a trial judge's delays of 12 to 14 months respectively, and did not flatly reject the notion that a District Court may rule on a timely filed Rule 35(b) motion within a reasonable time after the 120 day period has expired.

█ In contrast to the situations in *Schafer, Kajevic,* and *Pollak,* this Court has made every effort to expedite a ruling on Defendant's Rule 35(b) motion. Once the motion was filed on June 7, 1985, a hearing on it was set for June 14, 1985, which was the earliest possible date on which counsel who represented the parties at sentencing could argue the motion. The Court is ruling on the motion roughly a week and a half after the expiration of the 120 day period, and this brief delay has stemmed not from a desire to monitor and/or interfere with Parole Commission activities, but rather from my desire to reflect upon the arguments of counsel and give full and fair consideration to the Defendant's motion. Under these circumstances, the Court is satisfied that its delay is "reasonable" under both *Stollings* and *Schafer.* Hence, an analysis of the merits of the motion is appropriate and now will be undertaken.

## IV. *Defendant's Disparity in Sentencing Argument*

Counsel for Defendant earnestly contends that at worst the Court could have viewed Mr. Sheppard as being *equally* culpable with Karl Huber, Jr. in the Boden Mining Corp. tax fraud scheme, and realistically the Court should have viewed Sheppard as being *less* culpable than his co-defendant, who received a lighter sentence. From the Defendant's perspective, three points distinguish his involvement in the scheme from that of Karl Huber, Jr. First, Huber pleaded guilty to the more serious offense of conspiracy to defraud the IRS which authorized a maximum penalty of five years imprisonment and fine of $10,000, involved scheming among several individuals, and was aimed at such serious objects as defrauding the IRS, filing fraudulent partnership tax returns, filing fraud-

ulent individual tax returns on behalf of the IRS, and defrauding purchasers of various securities. In contrast, Sheppard pleaded guilty to an indictment count of aiding and abetting in the filing of false tax returns and an information count of the same violation; the maximum penalty for each count was three years imprisonment and a fine of $5,000. Yet the Court sentenced Sheppard to three years in prison while Huber was given five years probation. Second, Defendant asserts that an egregious disparity in sentencing is evidenced by the fact that Huber previously had been convicted of conspiracy, racketeering, and perjury based on Medicare, Medicaid, and Hill-Burton Act frauds, *See, United States v. Huber,* 603 F.2d 387 (2nd Cir.1979) when he came before this Court for sentencing, whereas Sheppard had no prior criminal record. Finally, Defendant asserts that because he was merely a salaried employee with no equity interest in Boden Mining Corp., his lesser degree of involvement warranted a lighter sentence than Huber, who created the partnerships, made the operating decisions, solicited investors, and syndicated and profited from the fraudulent tax shelters.

In the Court's view, Defendant's first and third submissions are so closely intertwined as to be indistinguishable; Huber's guilty plea to a more serious conspiracy violation was a natural consequence of his broader involvement in and direction of the tax fraud scheme. If it were this Court's mission in sentencing to consider solely co-defendants' (1) relative degrees of culpability and resulting offenses to which guilty pleas were entered and (2) past criminal records, Sheppard's disparity in sentencing argument might be a sufficient ground for granting his Rule 35(b) motion. However, this Court never has taken so narrow an approach to sentencing and in the case at bar, a host of additional factors were considered in arriving at the respective sentences for Huber and Sheppard. A brief survey of these factors will demonstrate that Defendant's disparity argument, though appealing as an abstract preposi-

tion without regard to the specific individuals involved, is meritless.

█ It is true that Karl Huber, Jr. came before this Court for sentencing in late March, 1985 as a convicted felon and a mastermind of the Boden Mining Corp. tax fraud scheme. However, he also came before this Court having served over 36 months in the Lexington Federal Correctional Institution (from June 26, 1980 to January 18, 1982) pursuant to his prior conviction, all of which time was served *subsequent* to his involvement in the scheme that was the subject of his guilty plea in the case at bar. Having experienced prison firsthand, and being free from the domineering influence of his deceased father for the first time in his life, Huber apparently had decided to put the past behind him and make a new start toward an honest life. As the Presentence Report indicates, at the time of sentencing, Huber *inter alia* had been enrolled in the agricultural engineering program at Rutgers University since the fall of 1982, had plans to become a farmer, was maintaining a very high grade point average despite heavy course loads, and was expected to obtain a Bachelor of Science in May of 1986. In addition, he was repentant and remorseful concerning his role as a mastermind of the Boden Coal scheme. In the Court's view, Huber, through his own initiative or through being incarcerated previously or through some combination of the two, had been rehabilitated *completely*. Under these circumstances, no purpose would have been served by imprisoning Huber again with the possible exception of punishment, which when taken by itself, did not justify disrupting or perhaps thwarting altogether his genuine attempt to redirect his life.

In contrast, Donald Sheppard came before the Court for sentencing both unrehabilitated and unrepentant. Although his role in the tax fraud was less significant or culpable than that of Karl Huber, Jr., it hardly could be termed inconsequential, because the inflated coal reserve reports were absolutely essential to the operation of both of the schemes to which he pleaded guilty. Furthermore, after he left the Hubers' operation and during part of the time period when Karl Huber, Jr. was in prison due to his prior conviction, Sheppard went on to play a limited but indispensable role in a second coal tax shelter fraud scheme, NRG–1979–I, which was the subject of the information count to which he pleaded guilty. Under these circumstances, the Court felt that deterrence was the primary purpose to be served by sentencing Sheppard to three years, with rehabilitation and punishment also being important goals of the sentence.

Although the above discussion of the rather unique circumstances that influenced the Court's sentencing determination in this case is sufficient to demonstrate that the Defendant's disparity argument lacks merit, the Court nonetheless will analyze the cases cited by Defendant for the proposition that the respective sentences imposed on Huber and Sheppard constitute a "gross miscarriage of justice" and deny Sheppard "equal treatment under the law." Defendant urges that *United States v. Wiley,* 267 F.2d 453 (7th Cir.1959), *remanded,* 184 F.Supp. 679 (N.D.Ill.1960), *rev'd and remanded with directions,* 278 F.2d 500 (7th Cir.1960), both parallels and condemns what happened in the case at bar, insofar as the District Court there arbitrarily singled out a minor defendant for the imposition of a three-year sentence but imposed a two year sentence on a more culpable ringleader who, subsequent to the offense in question and while out on bond, committed two similar offenses. *Wiley* is distinguishable because the sentencing disparity in that case obviously resulted from the trial judge's wooden application of his peculiar "long standing policy" of refusing to consider a probation application as an alternative to incarceration once a defendant declined to enter a guilty plea but instead chose to stand trial. On the first appeal, the Seventh Circuit, before remanding for reconsideration of the defendant's application for probation, mildly rebuked the trial judge as follows:

... the Probation Act extends to all defendants (with certain exceptions not here relevant) against whom a judgment of conviction is entered. It is obvious that such a judgment may follow either a plea of guilty *or a trial on a plea of not guilty.* However, under the standing policy announced by the district judge in this case, he does not consider an application for probation by a defendant who pleads not guilty and stands trial. While, in considering an application for probation, the court's decision on whether or not probation shall be granted in any particular case, is seldom set aside except for abuse of discretion, the intention of Congress, under the Probation Act, requires that an application for probation by a defendant convicted of the offense involved in this case must be received and acted upon by the court, *regardless of whether the conviction is based upon a plea of guilty or follows a trial* ... (emphasis supplied)

267 F.2d at 455. After the trial judge reimposed a three year sentence on remand, the Seventh Circuit quite properly expressed its distaste for the District Court's "long standing policy" more explicitly:

... we reject the theory that a person may be punished [more severely than a more culpable co-defendant who pleaded guilty] because in good faith he defends himself when charged with a crime, even though his effort proves unsuccessful. It is evident that the punishment imposed on Wiley was in part for the fact that he had availed himself of his right to a trial, and only in part for the crime for which he was indicted ...

278 F.2d at 504. In the case at bar, no capricious "policy" has been applied in a mechanical fashion so as to single out Sheppard arbitrarily for a more severe sentence than Huber; instead their respective sentences resulted from the Court's considered judgment based on the circumstances discussed above.

■ The Defendant cites a number of cases for the proposition that a minor defendant cannot be singled out for a more severe sentence than equally or more culpable co-defendants. *United States v. Shope,* 509 F.Supp. 1170 (N.D.Ohio 1981); *United States v. McRoy,* 452 F.Supp. 598 (W.D.Mo.1978); *United States v. Rubinson,* 426 F.Supp. 266 (S.D.N.Y.1976); *United States v. DelToro,* 405 F.Supp. 1163 (S.D.N.Y.1975). However, these cases are inapposite because they all involved co-defendants in particular crimes who were sentenced by *different judges,* a situation which substantially increases the risk of prejudicial disparities in sentencing. *Shope* involved disparate sentences handed out by judges in the same district but different divisions, 509 F.Supp. at 1171; *McRoy* involved disparate sentences due to the government's election to prosecute what was "basically a single prosecution in two different judicial districts," 452 F.Supp. at 600; the disparity in *Rubinson* arose out of a different judge's decision to grant a more culpable co-defendant's motion for a reduction of sentence, 426 F.Supp. at 267; and *DelToro* also involved sentences imposed by different judges. 405 F.Supp. at 1164. The only other case cited by Defendant on the disparity issue is *United States v. Busic,* 587 F.2d 577 (3rd Cir.1978), *rev'd,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1979), *on remand,* 639 F.2d 940 (3rd Cir.1981), and apparently Defendant's citation stems from footnote 6 in the first Third Circuit opinion. Footnote 6 simply recommends that the District Court on remand not permit a Defendant who fired his weapon at federal agents to receive a lesser sentence than a co-defendant who never drew his gun, a recommendation which this Court views as entirely reasonable. But every case involving the sentencing of co-defendants must be examined in light of its own particular and unique circumstances.

Judge Young expressed this general notion quite eloquently when he stated in *United States v. Shope,* 509 F.Supp. at 1171, that:

... [t]his Court has often said, both orally and in published writings, that the idea of disparity of sentencing is a myth;

that actually violators of any particular statute do not receive disparate sentences, even though the severity of the sentences varies, *because no two offenders are ever identical,* and usually the circumstances of the offenses are not identical either. *Identity is the basic element of disparity* ... (emphasis added)

In the case at bar, the two offenders were anything but "identical" and even though the violations to which they pleaded guilty were not the same, the differences between the individuals were so striking as to warrant imprisonment for Sheppard and probation for Huber. Accordingly, the Court concludes that Sheppard's disparity argument is without merit.

## V. *Defendant's Family Hardship Argument*

This Court recognizes that excessive hardships on a Defendant's family have been recognized as a valid justification for granting a Rule 35(b) motion. *Irizzary v. United States,* 58 F.R.D. 65, 67 (D.Mass.1973); *United States v. Orlando,* 206 F.Supp. 419, 420–21 (E.D.N.Y.1962). On the other hand, it is well settled that the District Courts also have discretion to deny a Rule 35(b) motion predicated on family hardship. *United States v. Bedrosian,* 631 F.2d 582, 583 (8th Cir.1980). In the case at bar, it is unfortunate that the three children residing in Sheppard's home are experiencing financial and medical difficulties. However, all of the children are adults (Sheryl is 27, Steven is 23, and Brian is 21), and Sheryl's hypoglycemia was described by her doctor as "mild." The Court therefore does not find the hardships experienced by the Sheppard children to be so severe as to warrant a reduction of sentence, and accordingly will not grant Defendant's motion on this basis.

## VI. *Defendant's Parole Ineligibility Argument*

The Defendant also contends that his Rule 35(b) motion should be granted because this Court's "original expectations" as to how long Sheppard actually would be imprisoned are being frustrated by the Parole Commission's application of its guidelines. The Court is aware that Sheppard has been placed in Category 6 pursuant to 28 C.F.R. § 2.20 (1984), which carries a parole prognosis of 40–52 months. The Court further realizes that although Defendant technically will be eligible for parole after serving one year (one-third of his sentence) under 18 U.S.C. § 4205(a), his chances for parole are virtually nil due to his being placed in Category 6, which is a high "severity of offense" rating. In addition, the Court recognizes that the Defendant is likely to serve in the range of two to two and one-half years based on his current sentence and the Parole Commission Guidelines. However, the Court at the time of sentencing did not possess any specific intent or expectation concerning a prospective parole date for the Defendant. To verify this, the Court asked its court reporter to review her stenographic notes of Sheppard's sentencing hearing for any such expressions of intent on the part of the Court and none were discovered. Under these circumstances, the Court's "intention" or "expectations" have not been frustrated and Defendant's parole ineligibility argument is without merit.

## VII. *Conclusion*

The Defendant's Rule 35(b) motion is addressed to the discretion of this Court, and this Court's ruling will not be overturned on appeal unless it is clear that its discretion has been abused. *United States v. Stumpf,* 476 F.2d 945, 946 (4th Cir.1973). Thus, counsel for the Defendant is correct in asserting that, unlike an appellate court reviewing a Rule 35(b) motion, this Court has relatively broad discretion to rule upon the motion as it deems appropriate. Cognizant of this weighty responsibility, the Court has reviewed the Presentence Reports of Sheppard and Huber, reflected upon the briefs and arguments submitted by counsel, and reassessed its initial disposition of the cases of Sheppard and Huber. Having undertaken a thorough review of all the circumstances surrounding

the sentencing of the Defendant, the Court can find no factual or legal considerations which warrant reducing the original sentence imposed upon Sheppard. Accordingly, it hereby is ORDERED that the Defendant's Rule 35(b) motion for a reduction of sentence is DENIED.